UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RANDEEP SINGH MANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00176-JPH-DLP |
| ) | |
| CHARLES DANIELS Warden, ) | |
| ) | |
| Defendant. ) | |

**Order Denying Plaintiff's Motion for Summary Judgment
and Granting Defendant's Cross-Motion for Summary Judgment**

Plaintiff Randeep Singh Mann, an inmate currently incarcerated at the United States Penitentiary-Tucson, filed this *Bivens* action alleging that the defendant, Warden Charles Daniels, violated the Eighth Amendment by failing to protect Mr. Mann from an attack by another inmate while Mr. Mann was incarcerated at the United States Penitentiary-Terre Haute (USP-TH). Mr. Mann moved for summary judgment, and Warden Daniels filed a cross-motion for summary judgment. These motions are now ripe for decision. For the reasons explained in this Order, Mr. Mann's motion for summary judgment is denied, and Warden Daniels's cross-motion for summary judgment is granted.

**I.   Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted undisputed (or disputed) fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot

1

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.     Facts

The following statement of facts was evaluated pursuant to the standards set forth above. The facts are considered undisputed except to the extent that disputes are noted.

Mr. Mann was incarcerated at USP-TH from July 7, 2014, to February 27, 2017. Dkt. 77-2 at pp. 6-7. The defendant, Charles Daniels, was the warden of the entire Federal Correctional Complex at Terre Haute, which included USP-TH, a medium-security correctional facility, and a federal prison camp, during the incident underlying Mr. Mann's complaint. Dkt. 77-1 at ¶ 3.

On April 18, 2016, Mr. Mann was moved from a general population unit to the special housing unit ("SHU") after drugs were found in his cell. Dkt. 77-3 (hereinafter "Mann Dep.") at pp. 23:24-24:2; 25:7-9.[1] Mr. Mann was initially placed in a holding cell with another inmate, Larry Allen. Dkt. 77-2 at ¶¶ 6-7. Mr. Mann did not know Mr. Allen prior to being placed in the holding cell with him. Mann Dep. p. 29:3-10. Later that day, Mr. Mann and Mr. Allen were moved to the same cell in the SHU. *Id.* pp. 27:17-28: 5.

In the afternoon of April 18, Mr. Mann's asthma flared up, and he began coughing and wheezing. *Id.* pp. 31:17-32:15. Mr. Allen did not like the coughing and wheezing, and he told Mr. Mann that he needed to stop. *Id.* p. 31:18. When Mr. Mann explained that he could not stop, Mr. Allen said Mr. Mann needed to leave the cell because Mr. Allen could not tolerate it. *Id.* p. 32:16-23. After this confrontation, Mr. Mann started making informal requests, referred to as "copouts," to be transferred out of the cell. *Id.* pp. 32:23-24; 33:24-34:8. He informed the officers working in the SHU that he wanted to be moved because he was not getting along with Mr. Allen. *Id.* p. 36:22-25. He did not get any responses to his requests to be moved. *Id.* p. 41:3-6.

---

[1] The transcript of Mr. Mann's deposition has been submitted to the Court with four pages of transcript to one page of the exhibit. The citation will reflect the page and line number of the deposition transcript, not the page number of the exhibit.

The next day, April 19, 2016, Mr. Mann submitted two more requests to be moved to another cell because Mr. Allen had threatened him. *Id.* p. 37:5-20. Mr. Allen told Mr. Mann that he was supposed to be in a cell alone, he had a violent history, and that he would assault Mr. Mann if he did not get moved. *Id.* p. 37:24-25; p. 38:1-12. Mr. Mann did not receive a response to either request to be moved. *Id.* p. 41:7-12. He also did not get a response from any of the three officers he spoke with that day. *Id.* p. 41:13-15.

On April 20, 2016, Warden Daniels walked through the SHU like he did every week. Dkt. 77-1 at ¶ 6. Mr. Mann told Warden Daniels that he was being threatened by Mr. Allen and asked to be moved to a different cell. *Id.* p. 46:5-13. Mr. Allen also spoke to Warden Daniels and told him that Mr. Mann needed to be moved. *Id.* p. 46:14-17. Warden Daniels agreed to "take care of the problem," and spoke to the officer who was accompanying him. *Id.* p. 46:18-23. The accompanying officer wrote something down on a notepad, and Warden Daniels said a transfer to another cell would "get done." *Id.* p. 46:23-25. Mr. Mann asked when he would be moved, and Warden Daniels said it would be later that evening. *Id.* p. 47:14-16. When Mr. Mann asked who would transfer him, the officer who was accompanying Warden Daniels said the "second in command" was going to take care of it. *Id.* p. 47:16-25.[2]

When Mr. Mann had not been transferred to another cell by dinnertime, he began asking correctional officers when he would be moved. *Id.* p. 49:2-4. The correctional officers did not know anything about Mr. Mann's request to be moved. *Id.* p. 49:3-4. Mr. Mann submitted another request to be moved because Mr. Allen was "threatening to beat the crap out of [Mr. Mann]," and

---

[2] During his disciplinary proceedings, Mr. Allen also stated that Warden Daniels told another officer to separate Mr. Mann and Mr. Allen. *See* dkt. 77-2 at p. 31.

4

the correctional officers did not know anything about Warden Daniels' statement that Mr. Mann would be moved. *Id*. pp. 49:15-50:16.

The next morning, April 21, 2016, Mr. Mann was standing at the door to his cell waiting to be called for recreation time. *Id*. p. 51:18-23. Mr. Allen had told Mr. Mann that he should refuse to come back from recreation in order to get transferred to another cell, and Mr. Mann agreed to do so. *Id*. p. 53: 10-16. Mr. Mann informed a nearby correctional officer that he needed to go to recreation, and the officer stated that there would be no recreation that day. *Id*. p. 53:17-19.

After hearing there would be no recreation that day, Mr. Mann told the correctional officer that he was to be transferred to another cell. *Id*. p. 53:19-20. He told the correctional officer about the conversation with Warden Daniels the day before, but the correctional officer had no knowledge or information of an impending move for Mr. Mann. *Id*. p. 53:21-24.

Mr. Allen then made a comment,[3] got down from his bunk, and assaulted Mr. Mann. *Id*. p. 54:5-10. Mr. Allen hit Mr. Mann across the face with a closed fist and continued to strike Mr. Mann until he fell to the ground. *Id*. pp. 54:20-55:7.

After the assault, Mr. Mann was taken for a medical assessment. Dkt. 77-2 at p. 23; dkt. 77-2 at pp. 25-27. The nurse noted a raised area on Mr. Mann's right forehead, a "small pinpoint" open area on his mid-forehead, bruising to his entire cheek, a "busted open" bottom lip, and a cut to the bridge of his nose. Dkt. 77-2 at p. 25. Mr. Mann received x-rays, and there was "[n]o radiographic evidence for fracture in the face." Dkt. 77-2 at p. 28.

---

[3] Although it is undisputed that Mr. Allen made a comment, there are different accounts of what exactly Mr. Allen said. Mr. Mann asserts that Mr. Allen said, "[H]ell, they ain't going to move you until they see blood." Mann Dep. p. 54: 5-6. A report prepared by a correctional officer claims that Mr. Allen said, "You need to get the [expletive] guy out of here." Dkt. 77-2 at p. 23.

5

Mr. Allen received a prison disciplinary conviction for assaulting another person as a result of the incident on April 21, 2016. *See* dkt. 77-2 at pp. 31-34.

### III. Analysis

Mr. Mann contends that Warden Daniels was deliberately indifferent to an imminent risk of serious harm in violation of Mr. Mann's Eighth Amendment rights when he failed to immediately transfer him to a different cell.[4] Warden Daniels argues that he is entitled to summary judgment because he reasonably responded to the risk posed to Mr. Mann by directing another prison staff member to transfer Mr. Mann. Warden Daniels also contends that he is entitled to qualified immunity.

Prison officials have a duty to protect those in their custody from violence at the hands of other inmates. But a "prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Thus, an Eighth Amendment failure-to-protect claim has both objective and subjective components. First, the harm to which the prisoner was exposed must be an objectively serious one. *See Gevas*, 798 F.3d at 480 (being stabbed by cellmate constitutes serious harm); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)[5] ("[A] beating suffered at the hands of a fellow detainee . . .

---

[4] In his motion for summary judgment, Mr. Mann includes an argument that can be construed as claiming that Warden Daniels was deliberately indifferent to his serious medical needs. *See* dkt. 74 at pp. 3-5. Mr. Mann did not present such a claim in his amended complaint, and the Court did not recognize such a claim in its entry screening Mr. Mann's amended complaint. *See* dkt. 24 (amended complaint); dkt. 27 (screening entry).

[5] *Brown* considered a failure-to-protect claim by a detainee awaiting a civil commitment trial, not a convicted prisoner, but nevertheless applied the Eighth Amendment deliberate indifference standard. *See* 398 F.3d at 910.

clearly constitutes serious harm."). Second, the subjective prong of the deliberate indifference standard "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas*, 798 F.3d at 481 (quoting *Farmer*, 511 U.S. at 837). In addition to knowing that the inmate faced a substantial risk of serious harm, an official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Neither party contests the first, objective component of the Eighth Amendment failure-to-protect analysis. Warden Daniels assumes for purposes of summary judgment proceedings that Mr. Allen's threats to Mr. Mann presented an objectively serious risk of harm. *See* dkt. 78 at p. 8. The parties also do not dispute that Warden Daniels had actual knowledge of the risk of serious harm to Mr. Mann. Rather, the parties disagree as to whether Warden Daniels responded reasonably to the risk of harm to Mr. Mann.

"Because a prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' prison officials who actually knew of a substantial risk to inmate health or safety can nevertheless escape liability if they responded reasonably to the risk, whether or not the harm was ultimately averted." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (quoting *Farmer*, 511 U.S. at 844-45). "[R]easonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful." *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997); *see also Long v. Steepro*, 27 F. App'x 625, 627-28 (7th Cir. 2001) (finding prison officials acted reasonably in response to information concerning threat to

7

inmate because prison officials investigated threat, offered to place inmate in protective custody, and moved inmate to a separate cellhouse where inmate had less contact with aggressor).

The undisputed evidence in this case establishes that Warden Daniels acted reasonably in response to Mr. Mann's allegations that Mr. Allen was threatening to assault him. When Mr. Mann informed Warden Daniels of the threats, Warden Daniels agreed to transfer Mr. Mann to another cell. Mann Dep. pp. 47:11-48:6; *see also* dkt. 24 at p. 6. After agreeing to "take care of the problem," Warden Daniels made a statement to the officer accompanying him, and that officer made a note on his notepad. Mann. Dep. 46:18-25. Warden Daniels then reassured Mr. Mann not to worry and that a transfer would "get done." *Id.* The officer who was accompanying Warden Daniels stated that the "second in command" would be the one responsible for moving Mr. Mann. Mann Dep. p. 47:14-25; *see also* dkt. 24 at p. 6.

Warden Daniels's affidavit corroborates the facts set forth above. He states that he delegated tasks related to the safety and security of inmates to staff at USP-TH. *See* dkt. 77-1 at ¶ 5. He further testified that he would have ordered another prison official to effectuate Mr. Mann's transfer, that he would have relied upon that prison official to carry out the order, and that he would not have personally participated in moving an inmate to a different cell during rounds because of the security risk. *Id.* at ¶¶ 9-10. Warden Daniels was not aware of any failures by prison officials to carry out his orders, and he states he could not "reasonably have followed up on each [order he gave] to ensure it was carried out." *Id.* at ¶ 9.

Although Mr. Mann contends that moving an inmate during SHU rounds would not pose a security risk to Warden Daniels, *see* dkt. 81 at p. 3, he has presented no evidence to dispute Warden Daniel's assertions that he delegated responsibility for daily operations of the SHU to the Captain, and the Captain oversaw Lieutenants and Correctional Officers who were responsible for

8

safety and security within the SHU, including moving inmates and responding to inmates' informal written complaints. *See* dkt. 77-1 at ¶ 5. Warden Daniels responded reasonably to learning of the threat to Mr. Mann when he directed other prison staff to transfer Mr. Mann to another cell. That prison staff did not quickly effectuate his orders is not sufficient to hold him personally liable. *See Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) ("[A] public official's inability to ensure that all subordinate federal employees follow the law has never justified personal liability.").

Additionally, although Mr. Mann argues that Warden Daniels should have immediately moved Mr. Mann to another cell,[6] he's presented no evidence to support a finding that it was unreasonable for Warden Daniels to wait for another prison official to complete the transfer at a later time. Mr. Mann stated in his deposition that Warden Daniels said the transfer would happen later that evening, and Mr. Mann was "extremely satisfied" with that response. Mann Dep. pp. 47:14-16; 48:18-20. Therefore, Mr. Mann must have believed that an assault by Mr. Allen was not imminent. In fact, the designated evidence indicates that it was not a delay in the transfer that caused Mr. Allen to assault Mr. Mann. Rather, Mr. Allen assaulted Mr. Mann only after it became clear the next morning that the transfer was not going to happen as Warden Daniels indicated. *See id.* pp. 53:10-54:10.

Mr. Mann has failed to raise a triable issue of fact as to whether Warden Daniels responded reasonably to the known risk of harm to Mr. Mann. As such, Mr. Mann has failed to show that Warden Daniels was deliberately indifferent to the risks Mr. Mann faced from Mr. Allen.

---

[6] Mr. Mann also attacks an alleged failure by Warden Daniels to track requests for transfer submitted by SHU inmates. Dkt. 81 at p. 3. Warden Daniels' failure to follow-up on Mr. Mann's transfer request was at most negligence considering the undisputed evidence that Warden Daniels issued numerous orders a day and was not aware of any failures by prison officials to effectuate those orders. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) ("Mere negligence . . . is not enough to state a claim of deliberate indifference under the Eighth Amendment.").

## IV.     Conclusion

For the foregoing reasons, the motion for summary judgment filed by Mr. Mann, dkt. [74], is **denied**. The cross-motion for summary judgment filed by Warden Daniels, dkt. [77], is **granted**. This action is **dismissed with prejudice**. Final judgment consistent with this Order, the Order granting defendants' motion to dismiss, dkt. [71], and the screening entry, dkt. [27], shall now issue.

**SO ORDERED.**

Date: 11/2/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

RANDEEP SINGH MANN
24775-009
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov